# EXHIBIT B

# STATE OF MICHIGAN

# IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

DARRYL MORGAN,
JESUS GILLETTE,
JAMES WASHINGTON, and
RALPHEAL HAMPTON,

        Plaintiffs,

-vs-

ENVIRONMENTAL WOOD
SOLUTIONS II, LLC,

        Defendant.

Case No. 23- 006637-CD
Hon. Leslie Kim Smith

| | |
|---|---|
| ZACHARY T. RUNYAN (P83671)<br>RUNYAN LAW GROUP<br>Attorneys for Plaintiff<br>31211 Jefferson Ave.<br>St. Clair Shores, MI 48082<br>(248) 341-0794<br>Zrunyan@runyanlawgroup.com | Joseph A. Starr (P47253)<br>Frances J Hollander (P82180)<br>Starr, Butler, Alexopoulos & Stoner PLLC<br>Attorneys for Defendant<br>20700 Civic Center Dr., Ste. 290<br>Southfield, MI 48076<br>(248) 554-2700<br>jstarr@starrbutler.com |

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.

## PLAINTIFFS' FIRST AMENDED COMPLAINT

NOW COME Plaintiffs, by and through their attorneys, **RUNYAN LAW GROUP**, and for their First Amended Complaint filed pursuant to MCR 2.118(A)(1) against the above-named Defendant state as follows:

1

Document received by the MI Wayne 3rd Circuit Court.

## JURISDICTION AND VENUE

1.      Jurisdiction is proper because the amount in controversy exceeds this Court's jurisdictional minimum, not including costs, interests, and attorney fees.

2.      Venue is proper because Defendant Environmental Wood Solutions II, LLC has a place of business in Wayne County, Michigan and many of the relevant transactions and occurrences occurred in Wayne County Michigan.

## PARTIES

3.      Plaintiff Darryl Morgan, an African American male, is a resident of the County of Macomb, State of Michigan, and at all relevant times, was employed by Defendant Environmental Wood Solutions II, LLC.

4.      Plaintiff Jesus Gillette, an African American male, is a resident of the County of Wayne, State of Michigan, and at all relevant times, was employed by Defendant Environmental Wood Solutions II, LLC.

5.      Plaintiff James Washington, an African American male, is a resident of the County of Macomb, State of Michigan, and at all relevant times, was employed by Defendant Environmental Wood Solutions II, LLC.

6.      Plaintiff Ralpheal Hampton, an African American male, is a resident of the County of Macomb, State of Michigan, and at all relevant times, was employed by Defendant Environmental Wood Solutions II, LLC.

Document received by the MI Wayne 3rd Circuit Court.

7.     Defendant Environmental Wood Solutions II, LLC, (hereinafter "Defendant" or "EWS") is a Domestic Limited Liability Company that has a place of business in the County of Wayne, State of Michigan.

## FACTS

8.     Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

## DARRYL MORGAN

9.     In or around April of 2022, Plaintiff Morgan was hired by Defendant as a truck driver.

10.     Since being hired by Defendant, Plaintiff Morgan has been stationed at Defendant's Detroit location.

11.     Throughout his employment with Defendant, Plaintiff Morgan has been subjected to discriminatory treatment based on his race.

12.     For example, Plaintiff Morgan is provided substantially lower quality trucks to drive than similarly situated white employees.

13.     The lower quality trucks consistently result in Plaintiff Morgan's trucks having mechanical issues, which reduces the amount of truck loads Plaintiff can transport, resulting in reduced pay.

14.     Plaintiff Morgan's hourly pay is also substantially less than similarly situated white employees with less experience than Plaintiff.

15.     Additionally, Plaintiff Morgan has been subjected to pervasive racial harassment from his white coworkers.

Document received by the MI Wayne 3rd Circuit Court.

16. Said racial harassment includes, but is not limited to:

    a. Frequent and open use of the word N*gger by white employees

    b. White employees frequently refer to black employees as "Forest Monkeys".

    c. Defendant's mechanics refer to sub-par repairs as "N*gger-rigged".

    d. One of Defendant's owners, Joseph Corrigan, stated that he hated all of the "N*gger drivers" in Detroit.

    e. One of Defendant's employees, Ricky Glass, a white male, put a note on the communal microwave that said "N*ggers will be N*ggers".

17. Eventually, Plaintiff Morgan complained to his supervisors about the constant and openly racist behavior.

18. Specifically, Plaintiff Morgan complained about, among other things, his white coworker, Ricky Glass, openly referring to black employees as N*ggers.

19. Despite Plaintiff Morgan's complaints, Defendant initially took no action to stop or prevent Ricky Glass from racially harassing Plaintiff and other black employees.

20. Due to Defendant's inaction for several weeks, Plaintiff Morgan escalated the situation to Defendant's Human Resources.

21. After being pressured by several black employees, including Plaintiff Morgan, Defendant finally terminated Ricky Glass.

22. After complaining about racial harassment, Defendant began retaliating against Plaintiff Morgan in ways including, but not limited to:

    a. Pressuring Plaintiff Morgan not to take lunch breaks

    b. Reducing Plaintiff Morgan's work hours

    c. Failing to provide Plaintiff Morgan his annual raise

4

Document received by the MI Wayne 3rd Circuit Court.

23.     Additionally, Defendant has done nothing to stop and/or prevent continued racial harassment of black employees by the white employees still employed by Defendant.

24.     Due to the abovementioned conduct, Plaintiff Morgan filed an EEOC charge.

25.     Plaintiff Morgan received his right to sue letter on April 11, 2023.

26.     On or about April 13, 2023, Plaintiffs' Counsel sent a letter to Defendant indicating that Plaintiff Morgan had retained an attorney and would be pursuing legal action for Civil Rights violations committed by Defendant and Defendant's employees.

27.     On or about April 20, 2023, Plaintiff Morgan was forced into a meeting with several of Defendant's managers and one of its owners, Michael Corrigan.

28.     During the meeting, Plaintiff Morgan was questioned about his potential legal action and pressured to stop communicating with his attorney.

29.     Near the end of the meeting, Mr. Corrigan threatened that things would "not end well" for Plaintiff Morgan if Plaintiff pursued legal action.

30.     Since the abovementioned April 20, 2023, meeting, Defendant's maintenance coordinator has been referring to Plaintiff Morgan as the 'ring leader' of the black employees that have complained about Defendant's racially hostile environment.

31.     Defendant's employees have admitted to Plaintiff Morgan and Plaintiff's coworkers that Defendant is targeting Plaintiff due to the belief that he is the 'ring leader' of black employees that have complained about Defendant's racially hostile environment.

Document received by the MI Wayne 3rd Circuit Court.

32.     Additionally, in early June 2023, one of Defendant's white mechanics said, while referencing Plaintiff Morgan, "is that one of the N*ggers suing Joey[1]?"

33.     As a result of Defendant's actions, Plaintiff Morgan has suffered and will continue to suffer damages, including but not limited to the following:

     a.  Stress;

     b.  Humiliation;

     c.  Embarrassment;

     d.  Outrage;

     e.  Mental anguish;

     f.  Fear and mortification;

     g.  Emotional Damages;

     h.  Economic damages;

     i.  Non-economic Damages;

     j.  Attorney fees and costs;

     k.  Other damages to be discovered through the course of litigation

**JESUS GILLETTE**

34.     On or about March 1, 2022, Plaintiff Gillette was hired as a truck driver stationed at Defendant's Detroit Location.

35.     Upon being hired by Defendant, Plaintiff Gillette was provided a wage of $24/hr.

---

[1] Joey Corrigan is one of Defendant's executive officers.

6

Document received by the MI Wayne 3rd Circuit Court.

36.     Plaintiff Gillette was promised a raise within the first 90 days of employment.

37.     Defendant never provided Plaintiff Gillette with the promised raise.

38.     Plaintiff Gillette's white counter-parts, many of them with less experience than Plaintiff Gillette, were being paid significantly more per hour than Plaintiff Gillette.

39.     Moreover, Defendant frequently sent Plaintiff home from work early allegedly due to a lack of available truck loads.

40.     Defendant did not send similarly situated white employees home early due to a lack of available truck loads.

41.     Additionally, Defendant began reducing Plaintiff Gillette's hours by refusing to timely fix mechanical issues with Plaintiff Gillette's truck.

42.     During the times Plaintiff Gillette was unable to work due to mechanical issues with his truck not being fixed, several white truck drivers with similar mechanical issues had their trucks timely repaired.

43.     Furthermore, during Plaintiff Gillette's employment with Defendant, he was subjected to racist behavior from Defendant's white employees which included, but was not limited to:

    a.  Defendant's white employees frequently using the phrase "N*gger-rigged"

    b.  Being told by Defendant's head mechanic that "These N*ggers tear up everything."

44.     As a result of the racial harassment, disparate pay, and Defendant's refusal to fix Plaintiff's truck, Plaintiff was constructively discharged on or about September 14, 2022.

Document received by the MI Wayne 3rd Circuit Court.

45.     As a result of Defendant's actions, Plaintiff Gillette has suffered and will continue to suffer damages, including but not limited to the following:

    a.  Stress;

    b.  Humiliation;

    c.  Embarrassment;

    d.  Outrage;

    e.  Mental anguish;

    f.  Fear and mortification;

    g.  Emotional Damages;

    h.  Economic damages;

    i.  Non-economic Damages;

    j.  Attorney fees and costs;

    k.  Other damages to be discovered through the course of litigation.

### JAMES WASHINGTON

46.     On or about July 1, 2022, Plaintiff Washington was hired by Defendant as a truck driver stationed at Defendant's Detroit location.

47.     In or around September of 2022, Defendant began forcing Plaintiff Washington, along with other black drivers, to come into work at 6:00 am rather than 4:30am when the white employees were scheduled to come into work.

48.     As a result of the later start time, Plaintiff received less hours and less money than his white counterparts.

Document received by the MI Wayne 3rd Circuit Court.

49.     Additionally, on some weeks, in order to make up the hours, Plaintiff Washington was forced to work on Saturdays.

50.     Plaintiff's white counterparts were not forced to work on Saturdays.

51.     Additionally, Defendant regularly sent Plaintiff Washington home from work early, claiming that there was not enough work available for Plaintiff.

52.     Defendant did not send similarly situated white employees home for lack of work.

53.     Additionally, Plaintiff Washington has been consistently paid less than white truck drivers that had less experience than Plaintiff Washington.

54.     Furthermore, Plaintiff Washington has been subjected to racist behavior from his white coworkers including, but not limited to:

    a.  Plaintiff's white coworker told Plaintiff Washington that black people are "just lazy"

    b.  Black employees frequently refer to black employees to as "N*ggers"

    c.  White employees frequently refer to black employees as "Porch Monkeys"

    d.  Defendant's dispatcher referred to President Joe Biden as "Your President". The dispatcher's comment was a direct reference to Plaintiff's race.

55.     In or around January of 2023, Plaintiff Washington complained to Defendant about, among other things, his white coworker, Ricky Glass, openly referring to black employees as N*ggers.

56.     Despite Plaintiff Washington's complaints, Defendant initially took no action to stop or prevent Ricky Glass from racially harassing Plaintiff and other black employees.

9

Document received by the MI Wayne 3rd Circuit Court.

57. Plaintiff Washington was forced to continue working with Ricky Glass for several weeks.

58. Plaintiff Washington also complained to Defendant's management about black drivers receiving increased supervision and scrutiny compared to white drivers.

59. Following Plaintiff Washington's complaints, Defendant retaliated against Plaintiff Washington in ways including, but not limited to:

   a. Frequent complaints from management if Plaintiff Washington's truck was stuck in traffic, if Plaintiff Washington stopped for a lunch break, or if Plaintiff Washington stopped for a restroom break.

   b. Plaintiff Washington was pressured not to take lunch breaks or restroom breaks.

   c. Plaintiff's supervisor called Plaintiff late at night on New Years Day, while Plaintiff was off duty, to demand that Plaintiff come into work early the next morning.

   d. Defendant forced Plaintiff Washington to submit to a random breathalyzer test, despite Plaintiff not having any prior issues with alcohol. Upon information and belief, no other employees underwent breathalyzer tests.

   e. Defendant began sending Plaintiff Washington home from work early more often.

60. On or about February 1, 2023, Plaintiff Washington sustained an injury while unloading his truck in a landfill.

61. Following Plaintiff's injury, Defendant tried to force Plaintiff Washington to sign a false statement regarding the circumstances of the injury.

62. Additionally, Defendant impeded Plaintiff Washingotn's ability to file a worker's compensation claim.

10

Document received by the MI Wayne 3rd Circuit Court.

63.     Defendant had not treated white employees in the same manner following injuries sustained on the job.

64.     As a result of Defendant's actions, Plaintiff Washington has suffered and will continue to suffer damages, including but not limited to the following:

  a.  Stress;

  b.  Humiliation;

  c.  Embarrassment;

  d.  Outrage;

  e.  Mental anguish;

  f.  Fear and mortification;

  g.  Emotional Damages;

  h.  Economic damages;

  i.  Non-economic Damages;

  j.  Attorney fees and costs;

  k.  Other damages to be discovered through the course of litigation

## RALPHAEL HAMPTON

65.      On or around May 16, 2022, Plaintiff Hampton was hired to be a truck driver at Defendant's Detroit location.

66.     At the time Plaintiff Hampton was hired, his initial pay rate was $26 per hour, but Defendant promised Plaintiff that he would be given a raise to $28 per hour after completing the first two weeks of his employment.

67.     Defendant never gave Plaintiff Hampton the raise.

11

Document received by the MI Wayne 3rd Circuit Court.

68.   Around the same time that Plaintiff Hampton was hired, Defendant hired white truck drivers with less experience than Plaintiff Hampton at a significantly higher pay right.

69.   Plaintiff Hampton constantly complained to his managers that he was being paid less than his white counterparts, and that he never received the promised pay raise.

70.   After Plaintiff Hampton began complaining about the pay disparity, Defendant's employees began retaliating against Plaintiff.

71.   For example, Defendant began incessantly taking Plaintiff Hampton's truck for unnecessary "preventative" maintenance, which rendered Plaintiff Hampton unable to work, and significantly reduced his hours.

72.   Indeed, the abovementioned "preventative maintenance" typically occurred once every three months, but after Plaintiff Hampton complained about disparate pay, the "preventative" maintenance occurred on a weekly basis.

73.   Defendant also began falsely accusing Plaintiff Hampton of not performing pre and post trip inspections.

74.    In or around October of 2022, Plaintiff Hampton attended a meeting with Defendant's managers and owners.

75.   During the meeting Plaintiff Hampton complained about issues including but not limited to:

   a.  Black drivers being paid less than white drivers

   b.  White employees incessantly saying "N*gger"

12

Document received by the MI Wayne 3rd Circuit Court.

      c. Defendant retaliating against Plaintiff Hampton by taking his truck for unnecessary maintenance

      d. Plaintiff Hampton being falsely accused of not performing pre and post trip inspections

76. Following the abovementioned meetings, Defendant increased its retaliation against Plaintiff Hampton.

77. For example, during a dispute with his managers about whether he could complete a load before the receiving yard closed, one of Plaintiff Hampton's managers, Justin Smolen, stated that he was "sick of this N*gger", referring to Plaintiff Hampton.

78. Soon thereafter, one of Plaintiff Hampton's truck tires blew out on the freeway, which is a common occurrence.

79. Defendant responded by falsely accusing Plaintiff Hampton of failing to conduct a pre-trip inspection and sending Plaintiff Hampton home for the rest of the day without pay.

80. Defendant kept Plaintiff Hampton off work for approximately two more days.

81. Moving forward, Defendant continued to pressure Plaintiff Hampton to not take lunch breaks, and would frequently send Plaintiff home early.

82. Defendant did not pressure its white employees to not take lunch breaks, nor did Defendant send its white employees home as frequently as it sent home its black employees, such as Plaintiff Hampton.

83. In December of 2022, Plaintiff filed a complaint with the EEOC.

13

Document received by the MI Wayne 3rd Circuit Court.

84.     On May 16, 2023, Plaintiff was supposed to undergo an employment review and receive an annual raise.

85.     Defendant refused to conduct the one-year review or give Plaintiff the raise he was entitled to.

86.     Upon information and belief, Defendant regularly provides yearly raises to its white truck drivers.

87.     Moreover, Defendant's employees have been loosening Plaintiff Hampton's lug nuts, taking air out of Plaintiff Hampton's tires, and sabotaging Plaintiff Hampton's truck in other ways in an attempt to render his truck inoperable.

88.     Additionally, Plaintiff Hampton consistently complained to management that Defendant's white employees were using racist language and referring to Defendant's black employees as "N*ggers" and other racially derogatory terms.

89.     However, the racist environment has continued.

90.     On or about April 13, 2023, Plaintiffs' Counsel sent a letter to Defendant indicating that Plaintiffs had retained an attorney and would be pursuing legal action for Civil Rights violations committed by Defendant and Defendant's employees.

91.     Shortly thereafter, one of Defendant's white mechanics said in Plaintiff Hampton's presence "is that one of the N*ggers suing us".

92.     As a result of Defendant's actions, Plaintiff Washington has suffered and will continue to suffer damages, including but not limited to the following:

   a.  Stress;

   b.  Humiliation;

Document received by the MI Wayne 3rd Circuit Court.

    c.  Embarrassment;

    d.  Outrage;

    e.  Mental anguish;

    f.  Fear and mortification;

    g.  Emotional Damages;

    h.  Economic damages;

    i.  Non-economic Damages;

    j.  Attorney fees and costs;

    k.  Other damages to be discovered through the course of litigation

### COUNT I: VIOLATION OF MICHIGAN'S
### ELLIOTT-LARSEN CIVIL RIGHTS ACT
***(Disparate Treatment)***
**(Asserted by all Plaintiffs)**

93.    Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

94.    At all material times, Plaintiffs were employees, and Defendant was their employer, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq*.

95.    Defendant is vicariously liable for the violation of Plaintiffs' Rights under the Michigan Elliott-Larsen Civil Rights Act by its employees and agents under the doctrine of *respondeat superior.*

96.    Plaintiffs' race and/or color was a factor that made a difference in Defendant's treatment of Plaintiffs.

Document received by the MI Wayne 3rd Circuit Court.

97.     Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of race and/or color and acted in accordance with that predisposition.

98.     Defendant, through its agents, representatives, and employees, treated Plaintiffs differently from similarly situated employees in the terms and conditions of employment, based on the unlawful considerations race and/or color.

99.     Defendant's actions were willful, intentional, and/or made in reckless disregard of Plaintiffs' rights and sensibilities.

100.    As a result of said disregard of Plaintiffs' rights and sensibilities, Plaintiffs were, among other things, paid significantly less than white counterparts, offered less hours than their white counterparts, and constantly subjected to racial harassment.

101.    As a direct and proximate result of Defendant's unlawful actions, Plaintiffs have sustained and continue to sustain injuries and damages.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment on Plaintiffs' claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

## COUNT II- VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT
### *(Hostile Work Environment)*
### (Asserted by all Plaintiffs)

102.    Plaintiffs re-allege and incorporate, by reference, the forgoing paragraphs as if fully set forth herein.

Document received by the MI Wayne 3rd Circuit Court.

103.    At all material times, Plaintiffs were employees, and Defendant was their employer, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101, et seq.

104.    Defendant is vicariously liable for the violation of Plaintiffs' Rights under the Michigan Elliott-Larsen Civil Rights Act by its employees and agents under the doctrine of *respondeat superior*.

105.    Plaintiffs were subjected to unwelcomed conduct due to their race, and/or color.

106.    The unwelcomed conduct complained of was based on Plaintiffs' race and/or color.

107.    The unwelcomed conduct affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with Plaintiffs' work performance and/or creating an intimidating, hostile or offensive work environment.

108.    As a direct and proximate result of Defendant's unlawful actions, Plaintiffs have sustained and continue to sustain injuries and damages.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment on Plaintiffs' claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

Document received by the MI Wayne 3rd Circuit Court.

## COUNT III
## VIOLATION OF MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT
### *(Retaliation)*
### (Asserted by all Plaintiffs)

109.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

110.    Defendant retaliated against Plaintiffs for engaging in protected activities including but not limited to lodging complaints of racial harassment and racial discrimination.

111.    Plaintiffs were subjected to adverse employment actions, including, but not limited to, reduced work hours, continued racial harassment, threats by Defendant's owner, pressure from managers to not engage in protected activities, and pressure to not take lunch breaks and restroom breaks.

112.    Defendant's actions were intentional, with reckless indifference to Plaintiffs' rights and sensibilities.

113.    As a direct and proximate result of Defendant's actions, Plaintiffs have suffered and continue to suffer damages and injuries.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment on Plaintiffs' claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

Document received by the MI Wayne 3rd Circuit Court.

## COUNT IV- TITLE VII- DISCRIMINATION ON THE BASIS OF RACE
### (Asserted by Plaintiff Morgan Only)

114.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

115.    Plaintiff Morgan is a member of a protected class on the basis of race.

116.    Plaintiff Morgan, in all respects, was performing his job in a manner that was consistent with Defendant's legitimate business expectations.

117.    Defendant discriminated against Plaintiff Morgan, as described above, in ways including, but not limited to, providing Plaintiff Morgan with lower quality trucks, reducing Plaintiff's hours, paying Plaintiff a lower wage, and not providing Plaintiff his annual wage increase.

118.    Defendant's actions were taken with a willful and wanton disregard of Plaintiff's Rights under Title VII.

119.    As a direct and proximate cause of said unlawful employment practices, and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered injuries and damages.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment on Plaintiffs' claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

Document received by the MI Wayne 3rd Circuit Court.

## COUNT V- TITLE VII- RETALIATION
### (Asserted by Plaintiff Morgan Only)

120.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

121.   Defendant retaliated against Plaintiff Morgan for engaging in protected activities including but not limited to filing complaints of racial harassment and racial discrimination.

122.   Plaintiff Morgan was subjected to adverse employment actions, including, but not limited to, reduced work hours, continued racial harassment, threats by Defendant's owner, and pressure from managers to not engage in protected activities.

123.   Defendant's actions were intentional, with reckless indifference to Plaintiff Morgan's rights and sensibilities.

124.   Defendant's actions were taken with a willful and wanton disregard of Plaintiff Morgan's Rights under Title VII.

125.   As a direct and proximate cause of said unlawful employment practices, and in disregard of Plaintiff Morgan's rights and sensibilities, Plaintiff has suffered injuries and damages.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment on Plaintiffs' claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

Document received by the MI Wayne 3rd Circuit Court.

## <u>COUNT VI- TITLE VII- HOSTILE WORK ENVIRONMENT</u>
### (Asserted by Plaintiff Morgan Only)

126.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

127.   Plaintiff Morgan was subjected to unwelcomed conduct due to his race, and/or color.

128.   The unwelcomed conduct complained of was based on Plaintiff Morgan's race and/or color.

129.   The unwelcomed conduct affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with Plaintiff Morgan's work performance and/or creating an intimidating, hostile or offensive work environment.

130.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff Morgan has sustained and continues to sustain injuries and damages.

WHEREFORE Plaintiffs respectfully request this Honorable Court enter judgment on Plaintiff's claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

Respectfully submitted,

/s/ Zachary T. Runyan
Zachary T. Runyan (P83671)
**RUNYAN LAW GROUP**
31211 Jefferson Ave
Saint Clair Shores, MI 48082
Phone: (248) 341-0794
Email:  zrunyan@runyanlawgroup.com

Dated:  June 20, 2023

Document received by the MI Wayne 3rd Circuit Court.

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **June 20, 2023**, via:

☐ U.S. Mail                    ☐ Fax
☐ Hand Delivered         ☐ Overnight Carrier
☐ Certified Mail           ☒ Other:  <u>Mi-FILE Truefiling</u>
☐ ECF System              ☐ Email

_/s/ Zachary T. Runyan_

Document received by the MI Wayne 3rd Circuit Court.